RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
NISHA BROOKS-WHITTINGTON
ANNIE YOUCHAH
Assistant Federal Public Defenders
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Nisha_Brooks-Whittington@fd.org
Annie_Youchah@fd.org

Attorneys for George Orville Turner, Jr.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | Case No. 2:21-cr-00013-KJD-BNW-1 |
| Plaintiff, | **Motion to Suppress**[1] |
| v. | |
| George Orville Turner, Jr., | **(Evidentiary Hearing Requested)** |
| Defendant. | |

Social media websites, like Facebook, have changed the way we socialize and share information. There are over 1.84 billion users of Facebook[2] and George Turner is one user. Mr. Turner, like other Facebook users, uses the platform to share details about his personal life, including posting comments and pictures. The private information on Mr. Turner's Facebook accounts entitles him to Fourth Amendment protections against unreasonable searches and

---

[1] Certification: This Motion is timely filed. ECF No. 41.

[2] Facebook Investor Relations, Press Releases, *Facebook Reports Fourth and Full Year 2020 Results*, Jan. 27, 2021, https://investor.fb.com/investor-news/press-release-details/2021/Facebook-Reports-Fourth-Quarter-and-Full-Year-2020-Results/default.aspx.

seizures. This protection extends to Mr. Turner's home. Mr. Turner's Fourth Amendment protections, however, were violated by the Las Vegas Metropolitan Police Department when they executed two invalid search warrants for Mr. Turner's Facebook accounts and home. The warrants were not based on probable cause and the Facebook search warrant was overbroad. The invalid search warrants violated Mr. Turner's Fourth Amendment rights. The evidence seized from the invalid search warrants, including the firearm, ammunition, and the statements Mr. Turner made to police should be suppressed.

      Mr. Turner submits the following Points and Authorities in support. An evidentiary hearing is requested to resolve the factual disputes present.

      Dated: September 17, 2021.

RENE L. VALLADARES  
Federal Public Defender

*/s/ Nisha Brooks-Whittington*  
NISHA BROOKS-WHITTINGTON

*/s/ Annie Youchah*  
ANNIE YOUCHAH

Assistant Federal Public Defenders  
Attorneys for George Orville Turner, Jr.

**MEMORANDUM OF FACTS AND AUTHORITIES**

I.  **Relevant Factual Background and Procedural History[3]**

Utilizing his fake Facebook profile page, Las Vegas Metropolitan Police Department (LVMPD) Officer L. Jex came across a post advertising driver's licenses and identification cards. The post was made under the profile "Kizzy Chapo."[4] The post explained how the licenses and cards could pass tests, how they are delivered, and the available methods for payment.[5] The post also included photos of various state driver's licenses and identification cards.[6]

Facebook users commented on the post inquiring about its authenticity.[7] "Kizzy Chapo" allegedly responded by posting a video of a driver's license with a photo of an individual later determined by Officer Jex to be George Turner.[8] However, the name on the driver's license was not George Turner.[9] Officer Jex ran a records check and discovered the identification number on the driver's license belonged to someone else.[10] Officer Jex next alleged that "under

---

[3] The facts alleged are drawn from the discovery the government has thus far provided and are presented for purposes of this motion. Mr. Turner reserves the right to challenge and supplement the facts set forth here based upon his own investigation and information that may be discovered at the evidentiary hearing in this matter.

[4] Ex. A at 1 (Search Warrant Officer's Report).

[5] *Id*. Curiously, the application and affidavit fail to include images of the actual post. Undersigned counsel requested a copy of the post(s) referenced in Officer Jex's search warrant application and affidavit. However, to date, the government has not disclosed the requested material.

[6] According to Officer Jex, "multiple posts" were made to the "open source" Facebook page. Ex. B at 2 (Facebook Search Warrant). It is unclear whether he saw one post with a series of comments or if he saw more than one post for fraud related identifications and driver's licenses. The application and affidavit focuses specifically on the July 6, 2020 post. An evidentiary hearing is necessary to clarify what Officer Jex saw posted to the "Kizzy Chapo" profile.

[7] *Id*.

[8] *Id*.

[9] Ex. B at 4.

[10] *Id*.

3

the same post on July 6, 2020," "Kizzy Chapo" listed prices for the identification cards.[11] "Kizzy Chapo" also allegedly posted a statement referencing fake IDs and listed multiple states as well as allegedly post photos explaining the process for making and distributing identification cards.[12]

Officer Jex continued with his investigation and determined the profile name, "Kizzy Chapo" belonged to Mr. Turner.[13] Because the profile pictures on both the George Turner and "Kizzy Chapo" accounts were allegedly the same and the name on the George Turner account listed "Kiiz Chapo," Officer Jex believed that the "Kizzy Chapo" account was related to a second account under the name of George Turner.[14]

Based solely on the July 6, 2020 Facebook post[15] and that the two Facebook profiles appeared related, Officer Jex believed Mr. Turner was involved in forgery related crimes.[16] On August 4, 2020, Officer Jex applied for a search warrant to search both Facebook profile pages (Facebook search warrant).[17] The application and warrant sought: (1) basic user identity information; (2) IP address logs; (3) all private communications including in-box messages, sent messages, and messages in the trash folder; (4) stored user files including photographs, videos, blogs, and classifieds; (5) public wall messages and postings; (6) other general information, (7) phone numbers associated to the account; and (8) any and all Facebook

---

[11] *Id*.

[12] *Id*. at 5. Because the government has not provided undersigned counsel with the images Officer Jex viewed on the "Kizzy Chapo" Facebook profile, images which Officer Jex's claimed constituted probable cause for the search, an evidentiary hearing is necessary to determine the veracity of Officer Jex's statements.

[13] Ex. B at 4.

[14] *Id*.

[15] Counsel interprets Officer Jex's references to the posts as one post that has multiple comments. As noted earlier, an evidentiary hearing will clarify this factual issue.

[16] *Id*. at 6.

[17] Ex. B.

Messenger application messages including private inbox messages, private sent messages, and private messages in the trash folder.[18] The date range requested for the information was from June 1, 2020 to the current date (i.e. August 4, 2020).[19] A Nevada State district court judge approved the Facebook search warrant.[20]

Officer Jex obtained and reviewed the materials returned under the Facebook search warrant,[21] which led him to seek a second search warrant for Mr. Turner's home on November 7, 2020.[22] In his application and affidavit for the second search warrant, Officer Jex stated Mr. Turner's private messages revealed information related to the forgery related crimes.[23] He believed evidence of the crimes would be found in Mr. Turner's home.[24]

Officer Jex also believed that Mr. Turner "may be" in possession of a firearm.[25] As probable cause, Officer Jex noted Turner's arrest on May 14, 2020 for prohibited person in possession of a firearm, Turner's alleged Facebook' stories post on February 19, 2020, of a photograph showing two firearms, and Turner's private messages with another Facebook user on July 25, 2020, regarding a firearm.[26] Beyond these allegations, Officer Jex provided no corroborating evidence that Mr. Turner possessed a firearm. Furthermore, Officer Jex's application for the search warrant was supported by stale discussions referencing a firearm. Even in the absence of corroborating and recent information, Officer Jex still sought a search warrant for Mr. Turner's home to seize firearm related material. He further sought Mr. Turner's

---

[18] *Id*. at 2-3.
[19] *Id*.
[20] Ex. B.
[21] Ex. C at 2-4 (Arrest Report).
[22] *Id*.; Ex. D (Search Warrant for home)
[23] Ex. D at 13-20.
[24] *Id*. at 6.
[25] Ex. D at 21.
[26] *Id*. at 20-22.

5

DNA to compare to any DNA that may be found on any firearm retrieved from Mr. Turner's home.[27]

Officer Jex further believed Mr. Turner to be involved in the possession of drugs with intent to sell based on photos and videos he allegedly saw posted on Facebook.[28]  Despite not witnessing Mr. Turner possess or sale an illegal substance to anyone and despite not testing the purported substance to confirm its illegality, Officer Jex believed a crime was committed and that evidence of this crime would be found in Mr. Turner's home.  A Nevada State district court judge approved the application for the search of Mr. Turner's home.[29]

Officer Jex served the search warrant under the guise of following up with Mr. Turner on a separate matter.  That matter involved a call Mr. Turner made to LVMPD to report someone threw large rocks through the windows of his home.[30]  Mr. Turner believed the suspect was an ex-girlfriend.[31]  He filed a report and wanted to press charges.[32]

On November 8, 2020, Officer Jex and other LVMPD officers went to Mr. Turner's home.[33]  Believing the officers were there to follow up on his complaint, Mr. Turner allowed the officers to enter his home and he discussed the situation involving his ex-girlfriend.[34]  As Mr. Turner spoke to LVMPD officers, he was told to place his hands behind his back and was then placed in handcuffs.[35]  Officers searched Mr. Turner's home and seized several items,

---

[27] *Id*.
[28] *Id.* at 23-25.
[29] *Id.* at 27.
[30] Ex. A at 1-2.
[31] *Id*. at 2.
[32] *Id*.
[33] Ex. C at 4.
[34] Ex. A at 1-2.
[35] *See* Ex. A at 1.

including a firearm and ammunition.[36] Mr. Turner was questioned by LVMPD about his alleged involvement in the offense to which he provided statements.[37] The government later charged Mr. Turner with one count of prohibited person in possession of a firearm and one count of prohibited person in possession of ammunition under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[38]

## II.  Argument

LVMPD violated Mr. Turner's Fourth Amendment rights by executing two invalid search warrants on his Facebook accounts and home. Relying on the post to the "Kizzy Chapo" Facebook account, the Facebook search warrant failed to establish probable cause that evidence of a forgery crime would be found on *either* the "Kizzy Chapo" or George Turner Facebook accounts. Moreover, the Facebook warrant failed to limit the seizure to items related to the crime of forgery and was overbroad.

Like the Facebook search warrant, the search warrant for Mr. Turner's home is invalid for two reasons. First, because the evidence seized from the Facebook search warrant was illegally obtained, it cannot be used to establish probable cause for the search warrant for Mr. Turner's home. Second, the search warrant for Mr. Turner's home lacked probable cause to search and seize firearm related evidence.

All evidence seized under both warrants, including the firearm and ammunition as well as Mr. Turner's statements to police, must be suppressed as fruits of the invalid search warrants.

---

[36] Ex. C at 4.
[37] Exs. A at 2; C at 4.
[38] ECF No. 1.

**A. Mr. Turner's Fourth Amendment right against unreasonable searches and seizures was violated when LVMPD executed an invalid search warrant for his Facebook accounts.**

The Fourth Amendment protects against unreasonable searches and seizures and requires search warrants to be supported by probable cause. U.S. Const. amend IV. Probable cause exists "if an affidavit presents a 'fair probability' that evidence of criminal activity will be found in the place to be searched." *United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, the facts in an affidavit requesting a search warrant "must provide a substantial basis for the judge to conclude that the object of the search is probably on the premises to be searched at the time the warrant is issued." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004).

In the Facebook context, courts have found probable cause exists when the affidavit presents facts that establish evidence of a crime will be found on a defendant's Facebook account. For instance, in *United States v. Flores*, the defendant was arrested and charged for importation of marijuana. 802 F.3d at 1032-33. After the defendant's arrest, she made several jail calls that were recorded. *Id*. at 1033. One call was to the defendant's cousin. The defendant asked her cousin to delete whatever information he thought should be taken off her Facebook page. *Id*. Law enforcement subsequently obtained a search warrant for the defendant's Facebook account. *Id*. The appellate court concluded the affidavit established probable cause based on the jail call, defendant's request to have her Facebook account purged, and the proximity of the call to her arrest. *Id*. at 1043. These facts established more than a "fair probability" that evidence of a drug crime would be found on the defendant's Facebook account. *Id*.

Likewise, in *United States v. Chavez*, the court held a search warrant affidavit established probable cause to search the defendant's Facebook account. 423 F.Supp.3d 194 (W.D.N.C. 2019). In *Chavez*, law enforcement's *nine-year* investigation culminated in an application for a search warrant for defendant's Facebook account. *Id*. at 197-99. The affidavit

set forth: (1) the illegal scheme; (2) a report from one of the alleged victims of the scheme; (3) incriminating admissions from one of the co-defendants involved in the scheme that implicated the defendant; (4) provided information from the co-defendant that defendant was Facebook friends with him and another co-defendant; and (5) defendant's bank statements showing fraudulent deposits. *Id*. The court found that the affidavit provided a "substantial basis" to believe the defendant was involved in the fraudulent scheme and that his Facebook account would contain evidence of the crime. *Id*. at 206.

Unlike *Flores* and *Chavez*, the affidavit here fails to provide a "fair probability" or a "substantial basis" to believe that Mr. Turner's Facebook accounts contained evidence of a forgery crime.

### 1.     The Facebook search warrant lacked probable cause.

The search warrant for Mr. Turner's Facebook accounts was not supported by probable cause. First, regarding the search warrant for the "Kizzy Chapo" Facebook account, Officer Jex relied upon a post advertising the sale of driver's licenses and identification cards without even verifying whether the post was authentic. The advertisement appeared on the "Kizzy Chapo" page, but the post never included a name, telephone number, or other contact information to contact the seller and submit payment for the advertised goods.[39]

Officer Jex could have done more to corroborate the suspected forgery, but he failed to do so. He could have contacted any one of the Facebook users that inquired about the authenticity of the post to determine if it was real and if the poster was the same person advertising and making the alleged fake driver's licenses or identifications. Officer Jex had a fake Facebook account and could have used it to set up an undercover purchase of the alleged fake driver's license or identification card to confirm whether the advertisement was real, if fake licenses or cards could be brought, and to discover the leader of the alleged scheme. Had

---

[39] Ex. B at 3-5.

9

Officer Jex set up an undercover purchase he could have further determined whether Mr. Turner solely operated the "Kizzy Chapo" Facebook page or if other people could post on the page before seeking a search warrant. Neither Officer Jex nor any other LVMPD officer took these investigatory steps.

Officer Jex's reliance on a video that purported to show a driver's license with George Turner's picture also fails to establish probable cause. Officer Jex offered no further details about the video. Further, it is unclear whether the person depicted in the driver's license is George Turner. Even if it is Mr. Turner, the affidavit still fails to provide facts that Mr. Turner posted the video and created the driver's license.

Besides Officer Jex's observation of the July 6, 2020 post and accompanying video and photos and suspecting that the "Kizzy Chapo" account was related to the George Turner account, Officer Jex had no other information that a crime was being committed. He relied solely on this information without any further investigation. Unlike *Flores*, LVMPD did nothing to meaningfully investigate Mr. Turner's suspected involvement in a crime or that evidence of a crime would be found on his Facebook accounts. LVMPD's so-called investigation in support of the Facebook search warrant doesn't even begin to scratch the surface of the extensive investigation conducted in *Chavez*. Curiously, Officer Jex sought a search warrant approximately 30 days after viewing the Facebook post and accompanying video and photos.[40] During that 30-day period, Officer Jex could have, but chose not to, further investigate whether a crime had actually been committed and who may have committed it.

Second, like the "Kizzy Chapo" account, the search warrant for the George Turner Facebook account also lacked probable cause. Officer Jex believed the George Turner account had evidence of forgery on it merely because it had the same profile picture as the "Kizzy

---

[40] The application and affidavit for search warrant was dated August 4, 2020.

Chapo" account and the name provided on the account was "Kiiz Chapo."[41]  This is not suspicious.  It is not uncommon for Facebook users to create and use more than one profile or account and for those accounts to share similarities among the profile names, profile picture, and posts.  No additional allegations were made to support probable cause to search the George Turner page.  Officer Jex provided no information that the George Turner page was connected to any illegal activity.  The search warrant thus failed to establish probable cause that evidence of any crime would be found on the George Turner page.

Because the search warrant for the "Kizzy Chapo" and George Turner Facebook accounts was not supported by probable cause, Mr. Turner's Fourth Amendment rights were violated.

### 2. The Facebook search warrant was so broad it violated the Fourth Amendment's particularity requirement.

Besides probable cause, a warrant must particularly describe the place to be searched and the persons or things to be seized. U.S. Const. amend IV.  Particularity requires the warrant clearly state what is sought. *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (quoting *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993)).  "It is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *United States v. Irving*, 347 F.Supp.3d 615, 623 (D. Kan. 2018) (citation omitted).  The particularity requirement prevents "general, exploratory searches," *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986), which the Fourth Amendment protects against. *United States v. Shipp*, 392 F.Supp.3d 300, 311 (E.D. N.Y. 2019) (quoting *United States v. Bradbury*, 2015 WL 37373595 (N.D. Ind. 2015)).

---

[41] Ex. B at 4.

Social media accounts such as Facebook contain a vast number of details and information on a person's life. As courts have recognized, Facebook provides "a single window through which almost every detail of a person's life is visible. Indeed, Facebook is designed to replicate, record, and facilitate personal, familial, social, professional, and financial activity and networks." *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536, *8 (N.D. Iowa Feb. 6, 2020) (quoting *Shipp*, 392 F.Supp.3d at 300). A search of a Facebook account differs from a traditional search in that Facebook, the holder of the data, can search an individual account for law enforcement and provides the precise data requested. *Burkhow*, 2020 WL 589336 at *8 (citing *Blake*, 868 F.3d at ("[W]hen it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data."). Given Facebook's ability to fulfill specific data requests and the vast trove of personal information in an individual's social media account, "search warrants for social media profiles 'can and should be targeted and particular.'" *Burkhow*, 2020 WL 589336 at *8 (quoting *United States v. Hamilton*, 2019 WL 4455997, at *4 (E.D. Ky. Aug. 20, 2019).

Here, the Facebook search warrant essentially allowed LVMPD to obtain all data and information in the "Kizzy Chapo" and George Turner Facebook accounts, limiting the request by temporal purposes only. The search warrant contained virtually no limit on what LVMPD officers could search and seize. But the warrant should and could have been more limited in scope. The crimes specified in the search warrant was forgery and conspiracy to commit forgery.[42] The information Officer Jex requested from both accounts included eight categories of items to be seized: (1) basic user identity information; (2) IP address logs; (3) all private communications including in-box messages, sent messages, and messages in the trash folder; (4) stored user files including photographs, videos, blogs, and classifieds; (5) public wall messages and postings; (6) other general information, (7) phone numbers associated to the

---

[42] Ex. B at 3.

account; and (8) any and all Facebook Messenger application messages including private inbox messages, private sent messages, and private messages in the trash folder.[43] None of these categories were limited to seizing evidence of a forgery related crime.

The scope of the warrant should have been limited by the crime. *Irving*, 347 F.Supp.3d at 624 (holding that the Facebook search warrant should have been defined and limited by the only crime specified in the warrant). One way this could have been accomplished is by using search terms to limit the information requested from Facebook, as has been done in other cases. For example, in *Blake*, the defendant challenged the validity of a Facebook search warrant. 868 F.3d at 960. The court found that "with respect to private instant messages. . .the warrants could have limited the request to messages sent to or from persons suspected at that time of being prostitutes or customers." *Id.* at 974. The Facebook search warrant here could have limited the seizure to private messages sent to and from persons inquiring about or seeking to purchase driver's licenses and identification cards.

Further, the warrant could have specifically requested photos, videos, blogs, and classifieds that displayed or advertised driver's licenses and identification cards; public wall messages and postings that used the terms: "fake IDs", "driver's licenses," and "identification cards"; private inbox messages and private sent messages discussing driver's licenses and identification cards. However, no limitations were placed on the requested information although the Fourth Amendment requires it, and Facebook's guidelines support it. Facebook's guidelines on data retention state they "will search for and disclose data that is specified with particularity." Safety Center, Information for Law Enforcement Authorities, *Data Retention and Availability*, Facebook.com, https://www.facebook.com/safety/groups/law/guidelines/.

Besides the Facebook search warrant's failure to limit the seizure of evidence, it also was overbroad in seeking to search and seize evidence from the George Turner Facebook page,

---

[43] Ex. B at 2-3.

making it more of a general warrant that allowed unfettered rummaging through Mr. Turner's personal data.

### 3. Because the Facebook search warrant is invalid, the subsequent search warrant for Mr. Turner's home is also invalid and evidence seized therefrom are fruits of the poisonous tree.

Evidence "obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." *United States. v. Wanless*, 882 F.2d 1459, 1465 (9th Cir. 1989); *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987). Here, because LVMPD obtained evidence pursuant to an invalid search of Mr. Turner's Facebook accounts, that evidence cannot now be used to establish probable cause for the search of his home. Redacting the Facebook account evidence from the search warrant for Mr. Turner's home, the government is left with nothing to establish the requisite probable cause to search his home.

To enforce the protections of the Fourth Amendment, evidence seized because of a Fourth Amendment violation may not constitute proof against the victim of an illegal search. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). The exclusionary rule "prohibits the introduction of tangible materials seized during an unlawful search [or seizure], and of testimony concerning knowledge acquired during an unlawful search [or seizure]." *Murray v. United States*, 487 U.S. 533, 536 (1988) (internal citations omitted). "Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence both tangible and testimonial that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search [or seizure]. . ." *Id*. at 536-37. By refusing to admit evidence obtained through unlawful police conduct, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *Michigan v. Tucker*, 471 U.S. 322, 447 (1974). LVMPD would not have recovered any evidence in this case but for the unlawful search and seizure of Mr. Turner's

Facebook accounts.  Thus, the firearm, ammunition, and any statements made by Mr. Turner is derivative evidence and must be suppressed.

      **B.**    **Even if the Facebook search warrant was valid, the subsequent search warrant for Mr. Turner's home still violates the Fourth Amendment because the warrant lacked probable cause to search for evidence of a firearm related crime.**

On November 7, 2020, Officer Jex sought a second search warrant to search Mr. Turner's home relying on the following: (1) on February 19, 2020, Mr. Turner had posted to his Facebook Stories a photograph of two firearms inside of "what can be perceived to be a firearm store;[44]" (2) on May 14, 2020, Mr. Turner had been arrested by LVMPD for prohibited person in possession of a firearm; and (3) on July 25, 2020, Mr. Turner privately messaged with another Facebook user about a firearm.[45]  Based on this information, the Nevada State district court judge approved the portion of the search warrant that permitted seizure of firearm related evidence.

Officer Jex's application and affidavit to search Mr. Turner's home for a firearm lacked probable cause.  Officer Jex failed to describe the firearm that he believed Mr. Turner allegedly possessed.  He provided no independent evidence he or someone else saw Mr. Turner with a firearm.  And, significantly, Mr. Turner is not even pictured in the photograph depicting the two purported firearms.  Officer Jex had no information that the firearms were real.  Nor did he have any information that Mr. Turner was in the "firearm store,"[46] that he took the photograph, that Mr. Turner was near or even touched the firearms when the photograph was taken, or the date the photograph was taken.

---

[44] Ex. D at 21. The photograph was provided in discovery but was not part of the Facebook search warrant return.  Thus, it is unclear when and how Officer Jex discovered this photograph.

[45] Ex. D at 21-22.

[46] Ex. D at 21.

Additionally, the evidence Officer Jex relied on in support of probable cause was stale. The photograph was posted nine months before Officer Jex applied for the search warrant.[47] This clearly further diminishes the probability that a firearm would be found in Mr. Turner's home nearly a year later. The lapse of time was also evident from the private Facebook messages between Mr. Turner and another Facebook user that happened more than three months prior to Officer Jex's application for the search warrant. Mr. Turner's private discussion about a firearm failed to suggest that he would be in possession of a firearm at the time the warrant was issued. *See Alvarez*, 358 F.3d at 1203 (stating a search warrant "must provide a substantial basis for the judge to conclude that the object of the search is probably on the premises to be searched *at the time the warrant is issued*) (emphasis added).

Finally, Officer Jex's reliance on Mr. Turner's prior arrest for prohibited person in possession of a firearm was lacking. The circumstances of his arrest involved a traffic stop with him and two other people. Less than a month after his arrest, the case was dismissed.[48] Interestingly, Officer Jex failed to inform the Nevada State district court judge that the charge was dismissed when he sought the search warrant five months later.[49] Mr. Turner's prior *arrest* for possession of a firearm served as an insufficient basis to presume he would possess a firearm at the time the warrant was issued.

Given these points, Officer Jex failed to establish a "fair probability" that a firearm would be found in Mr. Turner's home.

C. **The Good-Faith Exception Does Not Apply.**

"If a warrant lacks probable cause, evidence obtained during its execution should generally be suppressed under the exclusionary rule. *United States v. Underwood*, 725 F.3d

---

[47] Ex. D at 21.
[48] Ex. E (Judgment – 20-CR-003033 State Case).
[49] Ex. D at 27.

1076, 1084 (2012) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).  However, Mr. Turner recognizes that evidence obtained under an invalid search warrant need not be suppressed when an officer acts "in objectively reasonable reliance on a subsequently invalidated search warrant. . . ." *United States v. Leon*, 468 U.S. 897, 922 (1984).  This is known as the "good faith" exception. *Id*.

The good faith exception has limits.  It does not apply in these four circumstances: (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge "wholly abandon[s] his [or her] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 922.  If any of these circumstances apply, the court need not inquire further and should conclude that the good faith exception does not apply. *Underwood*, 725 F.3d at 1087.

At least two of the circumstances apply here.  First, both warrants lacked probable cause. *See Leon*, 468 U.S. at 922 (good faith exception does not apply where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable").  The warrants failed to provide a fair probability that evidence of forgery and firearm crimes would be found in the Facebook accounts and Mr. Turner's home.  Second, the Facebook search warrant failed to particularize the items to be seized such that the LVMPD could not have reasonably presume it valid. *See Leon*, 468 U.S. at 922 (good faith exception does not apply where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid").  Under these circumstances, the search warrants are not saved by the good faith exception to the exclusionary rule.

### III.     Conclusion

The Facebook search warrant lacked probable cause and was so overbroad that Mr. Turner's Fourth Amendment rights were violated. The search warrant for Mr. Turner's home was also invalid because it lacked probable cause and was based on the invalid Facebook search warrant. The good faith exception is not applicable under the circumstances, therefore all evidence seized from both search warrants including the firearm and ammunition as well as the statements Mr. Turner made to police must be suppressed.

Dated: September 17, 2021.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

/s/ *Nisha Brooks-Whittington*
NISHA BROOKS-WHITTINGTON

/s/ *Annie Youchah*
ANNIE YOUCHAH

Assistant Federal Public Defenders
Attorneys for George Orville Turner, Jr.

**Certificate of Electronic Service**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

On September 17, 2021, she served an electronic copy of the above and foregoing **Motion to Suppress (Evidentiary Hearing Requested)** by electronic service (ECF) to the person named below:

        CHRISTOPHER CHIOU
        Acting United States Attorney
        SUPRIYA PRISAD
        Assistant United States Attorney
        501 Las Vegas Boulevard South
        Suite 1100
        Las Vegas, NV 89101

                                        */s/ Cecilia Valencia*
                                        Employee of the Federal Public Defender