UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00013-KJD-BNW |
| Plaintiff, | **ORDER DENYING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| v. | |
| GEORGE ORVILLE TURNER, JR., | |
| Defendant. | |

Before the Court is Magistrate Judge Weksler's Report and Recommendation (ECF #72) recommending that the Court grant Defendant's Motion to Suppress (ECF #42). The government objected to the report (ECF #79) and Defendant responded to the objection (ECF #83).

I.      Factual and Procedural Background

Defendant George Orville Turner, Jr. ("Turner") was charged with two counts of Felon in Possession of a Firearm and Felon in Possession of Ammunition. (ECF #1). His arrest came after Las Vegas Metropolitan Police Department ("Metro") searched his home and discovered a Glock, model 48, 9 caliber pistol and one or more rounds of Blazer 9mm luger ammunition. Id. at 3. Turner was convicted of aggravated assault in the third degree in 2011 in New Jersey; burglary in the third degree in 2014 in New Jersey; and possession of a controlled substance with intent to sell in 2016 in Nevada. Id. Each of these convictions was punishable by imprisonment for a term exceeding one year and prohibited Turner from owning a firearm. Id. At his initial appearance, Turner pleaded not guilty to both charges. (ECF #6).

On September 17, 2021, Turner filed a motion to suppress the firearm and ammunition, arguing that the warrants obtained by Metro officers to search his Facebook accounts and home were invalid and violated his Fourth Amendment rights. (ECF #42, at 2). The warrants were obtained by Metro officer Jex ("Officer Jex"). (ECF #72, at 1). Officer Jex observed suspicious

material on a Facebook account with the name "Kizzy Chapo" related to a forgery scheme. Id. at 3. A post from July 6, 2020 displayed photos of driver's licenses from several states and identification cards. Id. With the photo, the poster wrote:

> Need a drivers license!? Look no further. How do I do it? These drivers license pass every single test possible in any state. From holograms to microprint, from UV to scanning abilities. I prepare the IDs for every single test a bouncer or police officer has out there. They easily pass the bend test, backlight test, & several others you may have never ever heard of. How its delivered? IDs are generally crafted 4-6 days after your order has been placed, & will most likely be in your hands within 2-3 weeks of purchase. Passes the following: clubs, bars, casinos, rental cars, airports, hotels, motels, airbnbs, police traffic stops, warrants/fines, avoid jail time. Contact me for prices!! Prices vary depending on state you want. With regular shipping 2-3 weeks, rushed shipping is $40 estimated arrival: 12 days. Only accepting cash app, paypal, venmo payments.

Id. Other Facebook users commented on the post, asking whether it was real. Id. Kizzy Chapo responded by posting a video of a Pennsylvania driver's license with Turner's picture but the name Tyreik Shaamad Muhammad. Id. The identification number belonged to a woman named Natasha Reeves. Id. at 4. Under the post, Kizzy Chapo made a post identifying the states for which he makes false identification cards along with a post offering information about the process for making and distributing the forged cards. Id. With this information, Officer Jex sought to obtain a warrant to search the Facebook accounts of Kizzy Chapo and George Turner. Id. Officer Jex believed the Kizzy Chapo account was related to the George Turner account because both accounts had the same profile picture featuring a man with a mask, both accounts had pictures of that same individual without the mask, and Turner's account provided the name "Kiiz Chapo." Id. at 3. Additionally, Officer Jex compared the photos of the man from the Kizzy Chapo account with prior booking photos and identified the man as Turner. Id.

In the search warrant and affidavit, Officer Jex sought to seize the following categories of information from both the Kizzy Chapo and Turner Facebook accounts:

> 1. Basic user identity information – The date the profile was created; First and last names provided by the user; user ID; an email address provided by the user; City, State, country; Account creation date and time; IP address at the time of sign up.

      2. IP address logs – Historical IP logs from June 01, 2020 to current date.
      3. Private user communications – Private in-box messages, private sent messages, and private messages in the trash folder from June 01, 2020 to current date.
      4. Stored user files – photographs, videos, blogs, and classifieds.
      5. Public wall messages / postings from June 01, 2020 to current date.
      6. Other general information / records – Users date of birth, Gender, Hometown, Occupation, as well as historical private message header information.
      7. Phone numbers associated with the account and/or profile
      8. Any and all 'Facebook Messenger' application messages to include but not limited to Private in-box messages, private sent messages, and private messages in the trash folder from June 01, 2020 to current date.

Id. at 4. The affidavit did not list any posts related to the forgery scheme by the Turner account. Id. at 13. A state court judge signed the warrant on August 4, 2020 and Officer Jex seized the data. Id. at 4. While reviewing the Facebook data, Officer Jex identified conversations with four individuals that contained evidence of Turner's forgery scheme. (ECF #79, at 5). A user named Ashley Sade ("Sade") sent Turner a private message on the Kizzy Chapo account asking about the false identification cards. Id. Turner responded that it was not a scam, provided his rates and information about how to pay, noted that it was an "illegal service" and "federal offense," and that he was the middleman in the operation. Id. After receiving instructions from Turner, Sade placed an order for a false driver's license. Id.

      A conversation between Kizzy Chapo and Facebook user Keyarea Moore ("Moore") showed Moore's interest in a driver's license but her hesitancy to be scammed. Id. at 6. Turner assured Moore that it was not a scam, but an illegal service that he provided. Id. He then sent instructions on how to order the license. Id. A Facebook user called Jada Jada messaged Turner's Kizzy Chapo account to ask "Is it a legal license?" Id. Turner responded, "It's a fake drivers [sic] license." Id. Facebook user Lepatrick Featherston ("Featherston") also messaged the Kizzy Chapo account regarding Turner's post about fake driver's licenses. Id. Featherston told Turner, "Yeah bro I wouldn't be posting the driver licenses they can snitch on you bro." Id. Later in that same conversation, Turner discussed the acquisition of a firearm, stating that he "need[ed] one to keep in the crib cause I have been having a lot of weird shit happen" and that he "wanna get a Glock and get these camera [sic] installed this week." Id.

      Officer Jex continued to monitor both the Kizzy Chapo and Turner Facebook accounts.

On October 6, 2020, the Turner account posted a Facebook story advertising false driver's licenses. Id. Turner posted another video to his story, showing files entitled "HACKER PRO PACK, 2020 Scamming intro, ATM Hack, and ATM Skimmer" being scrolled through on an electronic device. Id. at 7. On October 15, 2020, the Kizzy Chapo account posted Facebook stories that included photographs of several identification cards. Id. The cards showed the photograph of the same person, English-American actor Wentworth Earl Miller III, with different information. Id. Some were California driver's licenses containing fraudulent information. Id. Based on his observations of the material seized from the Facebook accounts and Turner's subsequent posts to his accounts, Officer Jex applied for a search warrant to search Turner's home for evidence of conspiracy to commit forgery, possessing a document or personal identity information to commit forgery or counterfeiting, and owning or possessing a gun by a prohibited person. Id.

The warrant request included information about the forgery evidence Officer Jex viewed both from, and independent of, the Facebook warrant. Id. It also included information that Turner was charged on May 14, 2020 for owning or possessing a gun by a prohibited person contrary to NEV. REV. STAT. § 202.360.1. Id. Officer Jex described a post on Turner's account from February 2020 that included an image of two Glock handguns with the text, "Get you a bitch that puts guns in her name for you" and "Bae wya (where you at) Im [sic] tired of buying guns off the street." Id. at 7–8.[1] Officer Jex also observed two of Turner's posts that depicted narcotics and included this information in the warrant. Id. at 8. The warrant sought to seize, among other items, any computer devices, photographic equipment, identity documents, U.S. currency, electronic storage devices, firearms, and any articles of personal property tending to establish the identity of persons in control of the residence. Id.

Officer Jex obtained the warrant and officers searched Turner's home on November 8, 2020. Id. Officers found a 9mm caliber Glock 48 with serial number BRLK726 along with a

---

[1] The R&R suggests that this evidence was irrelevant and could not be used to establish probable cause to search for firearms because Turner was arrested for being a prohibited person in possession of a firearm. However, it tends to show that Turner knew he could not legally own a firearm, that he wanted to own one anyway, and that he was willing and ready to buy one. This information would assist a judge in making a commonsense probable cause finding.

loaded magazine in the broiler drawer of the oven and a box of ammunition in a cabinet above the sink. Id. The broiler drawer was large enough to hold the forgery related evidence that was seized that day, including four cell phones, one laptop, paperwork containing fraud material, one fake New Jersey driver's license, a New Jersey unemployment debit card, a Nevada unemployment debit card, and movie money. Id.

On January 13, 2020, a federal grand jury returned a two-count indictment charging Turner with Felon in Possession of a Firearm and Felon in Possession of Ammunition, both in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). Id. at 8–9. Turner filed a motion to suppress on September 17, 2021 and Judge Weksler held an evidentiary hearing on the motion on October 19, 2021. Id. at 9. Judge Weksler then issued her Report and Recommendation (R&R) that the motion to suppress be granted on December 7, 2021. Id.

II.   Legal Standard

A magistrate judge operates under the authority granted in 28 U.S.C. § 636. That authority permits magistrate judges to conduct hearings, "to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion" permitted in the statute. 28 U.S.C. § 636(b)(1)(B). "A judge of the court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Id. at § 636(b)(1). If a party files a timely objection to a magistrate judge's recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

III.   Analysis

The Court has reviewed the R&R and finds that the motion to suppress should be denied. For the reasons that follow, the Court finds that there was probable cause for the issuing judge to grant the Facebook warrant for both accounts, that the Facebook warrant was not overbroad, and that even if the warrant were overbroad, the good faith exception would apply.

A.   George Turner Facebook Account Probable Cause

There was probable cause to search both the Kizzy Chapo and George Turner Facebook accounts. Probable cause exists when "under the totality of the circumstances, 'there is a fair

probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Probable cause determinations are 'commonsense, practical' questions, and a 'fair probability' is less even than a preponderance of the evidence." United States v. Flores, 802 F.3d 1028, 1044 (9th Cir. 2015) (quoting United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). "Probable cause in a search warrant affidavit must be based on the material supplied by the affiant as well as 'reasonable inferences' drawn from the material." United States v. Bundy, 195 F.Supp.3d 1170, 1174 (D. Or. 2016) (quoting Gates, 462 U.S. at 238). Additionally, an issuing judge's probable cause determination "should be paid great deference by reviewing courts." Spinelli v. United States, 393 U.S. 410, 419 (1969) (abrogated on other grounds by Gates, 462 U.S. 213).

The issuing judge had probable cause to issue a warrant for the George Turner Facebook account. Not only was the information helpful in determining the identity and ownership of the Kizzy Chapo account, but it was not unreasonable to find that contraband or evidence of the forgery scheme would be found on that page. Reviewing courts are to give great deference to the issuing judge's commonsense decision. Spinelli, 393 U.S. at 419. The issuing judge's inference that evidence of the forgery scheme would likely be found on both of the Facebook accounts attributed to Turner was reasonable. The affidavit may not have established probable cause by a preponderance of the evidence, but the fair probability threshold is lower. By giving the issuing judge the appropriate deference, the Court finds there was a fair probability that contraband or evidence of the forgery scheme would be found on the Turner Facebook page.[2]

    B.  Overbreadth

The Court disagrees with the R&R's conclusion that the Facebook warrant was overbroad. It recommends that the warrant be found overbroad as applied to the items listed in categories 3, 4, 5, 6 (as it relates to historical private message header information only), and 8,

---

[2] In the alternative, even if there was not probable cause to search the Turner Facebook account, there would still have been probable cause to search Turner's home. The evidence found pursuant to the Kizzy Chapo warrant plus the material observed by Officer Jex established probable cause to search Turner's home for the firearm and forgery materials.

most of which were private message data. "A warrant is overbroad if it fails to establish 'probable cause to seize the particular thing[s] named in the warrant,' and courts will invalidate warrants 'authorizing a search which exceeded the scope of the probable cause shown in the affidavit.'" United States v. Martinez, No. 19-cr-00662-JSW-1, 2020 WL 3050767, at *5 (N.D. Cal. June 8, 2020) (quoting In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 857 (9th Cir. 1991)). Courts consider three factors in analyzing whether a warrant is overbroad:

> (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available.

Flores, 802 F.3d at 1044. The R&R made this analysis and concluded that the Facebook warrant was overbroad on some of the items to be seized. The Court disagrees and makes its own analysis.

First, there was probable cause to seize all items of the categories listed in the Facebook warrant. As stated, probable cause exists when "under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Luong, 470 F.3d at 902 (quoting Gates, 462 U.S. at 238). There was a fair probability that evidence of the forgery scheme would be found in each of the enumerated categories, including Turner's private messages. People interested in purchasing a fake driver's license would likely message Turner privately. Potential co-conspirators involved in the creation or shipping of the forged documents may have messaged Turner privately as well. Evidence of the crime would also likely be found in Turner's user files, including photographs and videos. Officer Jex had already observed Turner's posts of photographs and videos showing the fake licenses. As for the public wall posts, Officer Jex had already seen them as well because they were available for all of Turner's Facebook friends to see. Because there was a reasonable probability under the totality of the circumstances that evidence of the forgery scheme would be found in each category of the warrant, this factor weighs toward admissibility.

Second, the warrant and incorporated affidavit set forth objective standards by which

executing officers could differentiate items subject to seizure from those which were not. As the R&R points out, the affidavit is incorporated by the warrant and was attached to it. The Ninth Circuit "consider[s] an affidavit to be part of a warrant, and therefore potentially curative of any defects, 'only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search.'" United States v. SDI Future Health, Inc., 568 F.3d 684, 699 (9th Cir. 2009) (quoting United States v. Kow, 58 F.3d 423, 429 n.3 (9th Cir. 1995)). The Ninth Circuit noted that it remains "rigid in [its] insistence on both these requirements" to "assure that the affidavit actually limits the discretion of the officers executing the warrant." United States v. Towne, 997 F.2d 537, 548 (9th Cir. 1993) (internal quotations and citations omitted).

The warrant expressly incorporated the affidavit, stating "Proof by Affidavit having been made before me . . . said Affidavit attached hereto and incorporated herein by reference." (ECF #79-1, at 8). The first prong is satisfied. The second prong is not as obvious, but is satisfied. The R&R states that "there was no evidence that the affidavit accompanied the warrant while the search was executed." (ECF #72, at 16). Neither party explicitly addressed the issue while the government "appears to assume that Officer Jex's affidavit is part of the Facebook warrant, and Turner's position is unclear." Id. It then concludes that the court would treat the affidavit as being incorporated into the warrant because it did not change the court's conclusion. Id. at 16–17. However, whether the affidavit is considered impacts the analysis greatly. The government briefly addressed the issue in its objection to the R&R. It repeatedly mentions that the affidavit was attached and states that "the affidavit was available during the search for reference by Officer Jex." (ECF #79, at 11). Therefore, the second prong is satisfied.

The Court recognizes that the Ninth Circuit has found that absent any evidence that the affidavit accompanied or was attached to the warrant at the time the warrant was executed, the "fact that the warrant states that the affidavit is both attached and incorporated by reference is insufficient to permit us to conclude that the affidavit accompanied the warrant at the time of the search." United States v. Hotal, 143 F.3d 1223, 1225 (9th Cir. 1998). However, that holding is specific to an anticipatory search warrant that required the warrant to identify the condition

precedent to trigger the search. The warrant did not mention the triggering condition but the government argued the affidavit did. Id. at 1225. The affidavit would have been the only basis for the search. Hotal cites United States v. McGrew, 122 F.3d 847 (9th Cir. 1997) and United States v. Van Damme, 48 F.3d 461 (9th Cir. 1995) for this proposition. Both are distinguishable from the instant action. The warrant in McGrew "failed to specify any type of criminal activity suspected or any type of evidence sought." McGrew, 122 F.3d at 848. The warrant then referred to the "attached affidavit" that was not there. Id. Similarly, the warrant in Van Damme "said 'SEE ATTACHMENT #1' . . . [b]ut nothing was attached." Van Damme, 48 F.3d at 465. The Facebook warrant, which was not an anticipatory warrant, indicated the specific crimes alleged and the items to be searched. The attached affidavit supported and specified the search. The government's assertion in its signed motion provides evidence sufficient for the Court to find that the attached affidavit was available during the search and is incorporated by the warrant.

By including the affidavit in the analysis, the warrant provided objective standards for the executing officers. The Ninth Circuit has found that "reference to the 'specific illegal activity' at issue would 'provide substantive guidance for the [officers'] exercise of discretion in executing the warrant." United States v. Martinez, No. 19-cr-00662-JSW-1, 2020 WL 3050767, at *6 (N.D. Cal June 8, 2020) (quoting United States v. Spilotro, 800 F.2d 959, 964 (9th Cir. 1986)). In another instance, description of the alleged criminal behavior "provid[ed] executing officers with sufficient objective standards for segregating responsive material" from non-responsive material. Flores, 802 F.3d at 1044 (internal quotations omitted). The same happened here. The warrant and affidavit explain with detail the particular crimes for which evidence was sought and provide objective standards for segregating the responsive material from the non-responsive material, *i.e.*, evidence of forgery and conspiracy to commit forgery as detailed in the affidavit. In addition to explaining the alleged crimes, the affidavit listed examples of items the officers would be looking for: examples of Facebook posts, a video showcasing a false Pennsylvania driver's license, a post regarding prices for forged documents, evidence related to co-conspirators, and evidence to identify other potential suspects or witnesses to the crime. (ECF #79-1, at 3–5). Because the affidavit described the alleged crimes and gave examples of items to seize, the

warrant set forth objective standards by which officers could conduct their search. This factor weighs toward admissibility.

Third, while the government could have described the item with more particularity, the warrant was particular enough as to not be overbroad. The Ninth Circuit has demonstrated that "overseizing is an accepted reality in electronic searches because there is no way to be sure exactly what an electronic file contains without somehow examining its contents." Flores, 802 F.3d at 1044–45 (internal alterations and citations omitted). Additionally, the Supreme Court has indicated that specific, technical language is not expected in warrants. It found that "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation,'" and suggested that warrants be granted "a standard less demanding than those used in more formal legal proceedings." Illinois v. Gates, 462 U.S. 213, 235 (1983) (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)). While this language was addressing the Spinelli two-factor test, the Court finds it applicable and persuasive here. The warrant could have contained more specific language concerning the forgery scheme. However, the supporting affidavit and factual assertions gave officers enough guidance to lawfully execute the search. While it may not have been as particular as Turner would like, this factor does not weigh toward suppression enough to overcome the previous factors that weigh toward admissibility.

The Facebook warrant for the Kizzy Chapo and George Turner accounts established probable cause to seize the items listed in the warrant, contained objective standards and examples to guide the executing officers, and was not lacking in particularity such that it was overbroad. Therefore, the warrant to search the Facebook accounts was not overbroad.[3]

    C.  Good Faith Exception

The Court finds that even if the Facebook warrant were overbroad, the good faith exception would apply because the warrant was not facially defective such that an objectively reasonable belief in its validity would be impossible. Evidence seized pursuant to a facially valid search warrant that later is held to be invalid may still be admissible, if officers acted in good

---

[3] Because the Facebook warrant was valid and not overbroad, there was probable cause to issue the residential warrant.

faith and in reasonable reliance on the warrant. Kow, 58 F.3d at 428. The good faith exception does not apply, however,

> (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge wholly abandon[s] his [or her] judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

United States v. Underwood, 725 F.3d 1076, 1085 (9th Cir. 2013) (internal quotations omitted). "The government bears the burden of proving that reliance upon the warrant was objectively reasonable." Kow, 58 F.3d at 428. The R&R found that the good faith exception should not apply because when a "warrant is facially defective because it is overbroad, 'an objectively reasonable belief in its validity will be impossible.'" (ECF #72, at 25) (quoting Towne, 997 F.2d at 549). The Court, having found that the warrant was not overbroad, rejects this argument.

Additionally, in Kow, the Ninth Circuit discussed facially invalid warrants upon which no reasonable agents could rely. Kow, 58 F.3d at 428–29. The Court listed examples that would be overbroad and facially deficient, but recognized another case in which two narrowing elements of the warrant were sufficient to avoid the warrant being facially defective: limitation with respect to time and particular criminal activity. Id. at 428. "For example, in Michaelian, the warrant was limited with respect to time and particular criminal activities and was not so 'overbroad as to be facially deficient.'" Id. (quoting United States v. Michaelian, 803 F.2d 1042, 1048 (9th Cir. 1986)). These narrowing elements appear sufficient to give officers a reason to rely on the warrant. Both of those elements exist here. The Facebook warrant was limited to the time period of June 5, 2020 through August 4, 2020 and the affidavit sufficiently described the particular criminal activities for which the warrant was sought. Therefore, the Facebook warrant was not so overbroad such that an objectively reasonable belief in its validity would be impossible. The other circumstances preventing application of the good faith exception are also absent. Therefore, if the warrant were found to be invalid, the good faith exception would apply.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the magistrate judge's Report and Recommendation (ECF #72) is **REJECTED**.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress (ECF #42) is **DENIED**.

Dated this 21st day of January, 2022.

_____
Kent J. Dawson
United States District Judge